[No. 1183.]

THE STATE OF NEVADA, Respondent, *v.* JAMES WARREN, Appellant.

Settlement of Statement by District Judge—Supreme Court Has no Power Over in Criminal Cases.—In the absence of any statute upon the subject, the supreme court has no power to settle a statement on motion for a new trial in a criminal case, when the district court refuses to settle such statement according to the facts claimed by the moving party.

IDEM—REPORTER'S NOTES.—The district court has the right to settle the statement according to the facts of the case without regard to the recitals contained in the reporter's notes.

CRIMINAL LAW—SELF-DEFENSE—EVIDENCE AS TO ASSAULT—REMARKS BY THE JUDGE IN REFUSING INSTRUCTIONS—ERROR.—In a prosecution for murder where the defendant relies upon a justification, and evidence tending to establish such defense is given, it is error for the judge, in refusing to give certain instructions concerning the laws of self-defense, to remark to counsel, in the presence of the jury, that he did not give the instructions for the reason that he does not "remember of any testimony given in this case tending to show that the deceased ever made an assault upon the defendant, or that there was any attempted assault made by deceased at the time of the killing; but the jurors are the exclusive judges of the facts in the case." (Hawley, C. J., dissenting.)

APPEAL from the District Court of the Third Judicial District, Esmeralda County.

The facts are stated in the opinion.

*J. F. Boller*, for Appellant.

*W. H. Davenport*, Attorney-General, and *H. F. Bartine*, for Respondent.

By the Court, LEONARD, J.:

Defendant was convicted of murder in the second degree. He appeals from the judgment, and the order denying his motion for a new trial. The bill of exceptions, as signed and settled by the court, shows that at the trial, in the presence and hearing of the jurors, the court remarked as follows :

"I will not give defendant's instructions, numbers seven and eight, for the reason that I do not remember of any testimony given in this case tending to show that the deceased ever made an assault upon the defendant, Warren, or that there was any attempted assault made by deceased on Warren, at the time of the killing ; but the jurors are the exclusive judges of the facts of the case."

Before judgment was pronounced, and before filing his motion for a new trial, defendant objected to that part of the bill of exceptions which purported to state the remarks of the court above referred to, and claimed that they were

not as set out in the bill of exceptions as settled. He excepted, also, to the action of the court in striking out of the bill of exceptions what is claimed to have been a copy of the reporter's notes of the court's remarks, and he asked leave to make proof of the remarks that were in fact made. There is nothing in the record showing that counsel for the respective parties agreed that the remarks of the court were as stated in the bill of exceptions prepared and presented by defendant. We need not, therefore, express any opinion as to what would have been the effect of such an agreement. It is now urged that the court erred in refusing to permit defendant to introduce evidence showing what remarks were made. The *civil* practice act (Comp. Laws 1252) provides a remedy in *civil* cases, when the court refuses to settle a statement according to the facts claimed by the moving party, but in the *criminal* practice act there is no such provision. In California both the civil and criminal practice acts provide a remedy for such cases. The question is, whether, in the absence of a statute, this court has any power in the premises. We do not think it has. The statute makes it the duty of the trial court to settle the bill of exceptions according to the facts, and this court is obliged to take it, and act upon it, as signed and settled. The legislature has left the settlement to the lower court, without providing relief in case of real or imaginary error. Without affirmative legislative action this court is powerless. Upon the point that the court erred in striking out the reporter's notes of the remarks made, it is enough to say that the reporter's notes are not in the transcript, and if they were, we should hold that the court had the right to settle the bill according to the facts, and that such was its duty. (*State* v. *Larkin*, 11 Nev. 321.)

We come now to the question, whether the court's remarks set out above entitle defendant to a new trial. The record shows that defendant admitted killing Darling, but that he set up the defense of justifiable homicide. He testified that the deceased threatened his life at different times, and especially on the evening previous to the homicide.

Other witnesses corroborated his statement in this respect. Defendant's testimony is substantially this: That he met deceased the evening before the homicide. Deceased tapped defendant on the shoulder and said he wanted to see him. Defendant stepped aside, and deceased said there were three —— —— —— that he was going to kill, and defendant was one of them; that he would fill defendant full of holes; that deceased had a big pistol in his pocket, which he started to pull; that he raised his hand to hit defendant, and said, "I will see you again, you dirty —— —— ——;" that subsequently, during the evening, he was warned by different persons to look out for deceased; that, fearing an attack by deceased during the night, he put two chairs against the door, and threw himself down across the bed with his clothes on; that he got up early the next morning and went to the hotel by a back way. After stopping there about an hour he walked outside, and saw deceased down the street, and to keep out of his way, went into the barroom and walked up and down the floor for a while; that Darling came along, when defendant was within about two feet of the outside door, and said, "I have got you now," when defendant pulled his pistol and fired three times before deceased fell; that he thought Darling had a pistol, although he did not know it; that at the time of the shooting deceased had his hand in his pocket, where he had his pistol the previous evening. He also testified that "when he (deceased) saw me, he started in after me. He made a dart at me, and just as he came at me I fired two or three shots before he got down." Green testified for defendant that he saw Darling stop at the hotel door; that he made a move as if he was going in; that he had one hand in his pocket; that he heard him say something, but did not understand the words; that somebody said, "You come to threaten my life again." Witnesses testified that deceased was quarrelsome, especially when drinking, and that he was larger and stronger than defendant.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of

another.'' (Comp. Laws 2352.) Counsel for the state do not deny that there was testimony which, if credited, tended to prove an assault upon defendant. Whether or not that testimony was credible was for the jury to decide, as well as, whether, if credited, in connection with other evidence in the case, it was satisfactory proof of an assault.

Defendant requested certain instructions, which were refused, for the sole reason, as stated, that the court did not remember any testimony tending to show that Darling made, or attempted to make, an assault upon defendant at the time of the killing; '' but,'' said the court, in the same connection, ''the jurors are the exclusive judges of the facts in the case.'' It being unnecessary, we do not decide whether the court might have made the oral remarks under consideration, if, in fact, there had been no evidence of an assault. The question is, was it error to make them in view of the fact that there was such? It was of the first importance to defendant to show that Darling assaulted him at the time, or made demonstrations which, in view of all the facts, justified him, as a reasonable man, in believing that he was in danger of losing his life or receiving great bodily harm. Former threats alone did not excuse him. They were of little, if any, value to him in his defense, except in connection with acts committed at the time of the homicide. It follows that, if the court's recollection of the evidence, as stated, was correct, the defense of justification fell to the ground. The court was not required, in denying the instructions, to make these or any remarks tending to a misconstruction of the evidence. There was no occasion or demand for any comments, the natural tendency of which was to satisfy the minds of the jury upon a material question in controversy, without a careful consideration of the evidence given. That such was their tendency we cannot doubt. So certain was the court that there was no testimony tending to prove an assault, that the instructions were refused for the reasons stated only. The jury had good reason to think they would not have been refused, if the court was aware of any testimony tending to

prove an assault.     They had good reason to think, also, that the court would not have refused instructions, apparently unobjectionable in other respects, without being convinced that there was no testimony of the character mentioned; and the natural tendency of the remarks that accompanied the refusal was not materially changed by the use of the words, "I do not remember."

Jurors presume, and they have a right to presume, that courts remember testimony, if it is given, that is vital for or against either party; and this is especially true when the court unhesitatingly rules as it would have done if, in fact, there had been no such testimony.    It cannot be said the court would have had a right to state, in the presence of the jury, that *there was no testimony* tending to show an assault upon defendant, even though it had been said, also, that the jurors were the exclusive judges of the facts, notwithstanding the opinion of the court.     If such remarks would have been erroneous, were not those under consideration equally so ?     If there is testimony tending to show an assault, may a court say, "I will not give this instruction *because I do not remember any such testimony*," but cannot say, "I will not give it *because there is no such testimony* ?" In one case, as in the other, under the constitution and laws, the jurors are the exclusive judges of the facts, and they are so told by the court.     If the court says "there is no such testimony," still the jurors are the judges of the facts, and their legal duty is to examine the evidence and decide upon it, without reference to the judge's opinion.    In *Tickel's Case*, 13 Nev. 510, we said :   "It is entirely natural that jurors do, and proper that they should, listen attentively to, and be greatly influenced by, all remarks of the court.    They have the right to confide in its expressed opinions, and it is their duty to obey its legal instructions.    It may be said that jurors are presumed to know the law that the court has not the right to instruct them, or give any opinion, upon questions of fact; and that, therefore, they ought not to be and will not be influenced thereby.    In my opinion experience does not justify such conclusion; but, at any rate,

courts cannot presume against the natural result of remarks
or instructions improperly made. If the court, in this case,
had informed the jury that it had no right to comment or
instruct them upon questions of fact, and that they must not
be influenced by what it might say, still its expressed opinion
must have influenced them. They would have known the
opinion of the court then, as now, and it would have left its
impression upon their minds.''

Suppose the court had said, ''I will not give these
instructions because I do not remember any evidence tend-
ing to sustain defendant's claim or defense of justifiable
homicide.'' Can any one doubt that the effect of such
remarks would have been to prejudice the minds of the
jury against defendant? If the court fails to remember
important facts in a case, and so states in the presence of
the jury, is it not most natural for the latter to take the
court's view without examination, instead of carefully
weighing the testimony as it was given? In *State* v. *Ah
Tong*, 7 Nev. 152, this court said: ''Under our practice,
the judge should intimate no opinion upon the facts. 'If he
cannot do so directly, he cannot indirectly ; if not explicitly,
he cannot by inuendo; and the effect of such an opinion
cannot be obviated by announcing in distinct terms the
jury's independency of him in all matters of fact.' (*State*
v. *Dick*, 2 Winst. 47.) One object is stated to be, to guard
against the well known proneness of jurors to seek to ascer-
tain the opinion of the judge, and to shift their responsi-
bilities from themselves to the court.''

The vice of remarks like those under consideration,
whether they be ''there is no such testimony,'' or ''I do
not remember any such,'' is not that they take from the
jury their right to judge of the facts, but is that they throw
the weight of the court's opinion into the scale opposed to
defendant, when he has the right to be judged by the evi-
dence as construed by the jury, uninfluenced and unbiased
by any opinion of the judge. The natural tendency of the
remarks made in this case was to convey the idea to the
jury that in the opinion of the court no testimony was given

for the purpose of proving an assault upon defendant, or that the testimony offered and admitted for that purpose did not tend to prove an assault. In either case, the impression conveyed or opinion expressed was erroneous, and the result may have been to lead the jury into the error entertained by the court.

It is said by counsel for the state that, when the court refused the instructions upon the grounds stated, defendant's attorney should have refreshed the judge's memory by stating the testimony, and asking that the reporter's notes be read. This argument might or might not be sound (a question we do not decide,) if the question under consideration was whether the court erred in refusing the instructions asked ; but it certainly has no merit where the error complained of is the making of the remarks in question. Defendant's counsel had the right to ask the court to give these instructions. The court's duty was to refuse them if they were not law, or were inapplicable to the case; but it was not justified in refusing them for the reason that there was no evidence to support them, if such there was ; and it had no right to convey the idea to the jury that there was no evidence tending to show an assault, in the face of the testimony which, if believed, did tend to prove that material contested fact. Nor was it any part of the duty of defendant's counsel to correct the court's error after the remarks had been made. He was not there for that purpose.

There are several decisions of this court that bear upon the question under consideration, to which we refer : *People* v. *Bonds*, 1 Nev. 36 ; *State* v. *Ah Tong*, 7 Nev. 152 ; *State* v. *Harkin*, Id. 381 ; *State* v. *Tickel*, 13 Nev. 509 ; dissenting opinion of Mr. Justice Lewis in *State* v. *Millain*, 3 Nev. 468, referred to and approved by the court in *State* v. *Ah Tong, supra.* See, also, *Shirwin* v. *People*, 69 Ill. 56 ; *Fisher* v. *People*, 23 Ill. 294 ; *Sullivan* v. *People*, 31 Mich. 4.

Judgment and order appealed from reversed, and cause remanded.

HAWLEY, C. J., dissenting:

I am unwilling to give my sanction to a reversal of ·this case upon the ground stated in the opinion of the court. The constitution of this state declares that "judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." (Article VI, sec. 12.) The remarks of the district judge, while verging closely upon the prohibited line of the constitution, do not, in my opinion, cross it. It is claimed that the language of the judge, construed as it must be with reference to the time and manner of its use, was equivalent to a statement that there was no evidence tending to show an assault. If these premises are correct, then the conclusion arrived at by the court must necessarily follow, provided there was any evidence, however slight, tending to show an assault. But it seems to me there is a marked difference in the facts whether a judge states to the jury that there is no testimony upon a certain point, or simply states that he has no recollection of any testimony being given upon the point. In the former case the statement would, if there was any testimony, clearly invade the province of the jury, because the question at issue would thereby be withdrawn from their consideration; but in the latter case it would be left to the jury to decide whether there was any testimony which the court had overlooked, and, if any, whether it was sufficient to establish the fact in controversy, and hence the province of the jury would not necessarily be invaded. I do not think the time of making the remarks in question changes the result I have stated.

Under the provisions of the constitution the district judge may, if so inclined, "state the testimony." If in doing so he leaves out some material parts thereof, at the same time informing the jury that he has stated all the testimony within his recollection, but that they are the exclusive judges of the facts, and that it is their duty, in deciding the case, to consider all the testimony adduced at the trial, would the omission of the judge to state *all* the testimony justify a reversal of the case? I think not. Every prac-

titioner knows that in the trial of causes there often arises a controversy between counsel in relation to the testimony. How is that controversy to be decided ? If a reporter has taken down the testimony his notes may be referred to. Each counsel may state his recollection. The court may state what its memory is in regard thereto. But, after all, it is for the jury to decide, and if the disputed question is not withdrawn from their unbiased consideration, their peculiar province to decide the facts is not invaded.

The principles announced in the decisions cited in the opinion of the court and in appellant's brief are correct upon the facts which existed therein. It is always the province of the jury to say whether a fact is proved or not. They are the exclusive judges of the credibility of the witnesses, of the weight of the testimony, and of the facts established by the testimony. They must be left free to act in accordance with the dictates of their judgment. The final decision upon the facts rests with them, and any interference by the court with a view to influence them in finding a verdict against their convictions is unwarrantable and irregular. The constitutional provision is violated whenever a judge makes any remarks in the presence of the jury, or so instructs them as to force the jury to a particular conclusion upon the whole, or any part, of the case, or to take away their exclusive right to weigh the evidence and determine the facts from all the testimony given in the case. But in making the remarks in this case the district judge did not, in my opinion, charge the jury in respect to a matter of fact. He did not express any opinion upon the weight of the testimony, or make any statement as to the credibility of the testimony as given by any witness.

When an attorney desires an instruction to be given upon his theory of the case, is it not proper for him to call the attention of the court to the particular testimony upon which he relies to sustain the instruction ? If he omits to do so, and the court informs him that it has no recollection of any testimony having been given tending to show the existence of a fact referred to in the instruction, is it not

the duty of counsel to refresh the memory of the court by a reference to the testimony ?　It is true that the court is not usually called upon to make any remarks in giving or refusing instructions ; but, if it did not remember the testimony, would it be improper to request counsel to refer to the particular testimony upon which they rely, so as to enable the court to act intelligently in the matter?

In *People* v. *Barnhart* the court agreed in its recollection with the district attorney that no evidence had been given of the character claimed by defendant's counsel, and at the same time said "that the jury were the sole judges of what the testimony, if any, in that respect was."　Defendant's counsel excepted to the action of the court in allowing the district attorney to proceed in arguing the case upon the theory that no such testimony had been given.　The supreme court declared the exception to be without merit :　"An erroneous statement of the testimony to a jury by counsel in the trial of a cause is not an error for which a new trial will be awarded.　It would be strange if it was.　It often occurs that counsel do not agree as to what the testimony is. Indeed, it rarely happens that they do.　It is for the jury to determine that question, and so the court told the jury in this case, at the same time affording defendant the opportunity, of which he did not avail himself, to show from the reporter's notes just what the testimony was."　(59 Cal. 402.)

In *State* v. *Reynolds* the court stated the testimony given by the witnesses in chief, without adverting to the facts elicited upon the cross-examination ; but closed its remarks with the injunction that the jury "must base their verdict upon all the evidence."　The court, in disposing of the exceptions to the omission of the court, said, quoting from the previous decision of *State* v. *Grady,* 83 N. C. 643 :　"It was the duty of counsel, if evidence important to the defense had been overlooked, *then* to call it to the attention of the judge and have the omission supplied.　It would neither be just to him, nor conducive to a fair trial, to allow this neglect or oversight, attributable to the counsel quite as much as to the judge, to be assigned for error, entitling the accused to another trial."　(87 N. C. 546.)

In *State* v. *Reed* the court said : "It can hardly be expected that a judge, in his charge, shall allude to all the testimony developed during a long trial, or all the circumstances growing out of it, nor is it necessary after a full and careful analysis of it by able counsel. But if any material omission or misstatement occur, it is the privilege and the duty of counsel to call the attention of the court to it at the time, otherwise all grounds of complaint are waived." (62 Me. 137.)

These cases do not present precisely the same question as in the case at bar ; but the principle announced is, in my opinion, more applicable to the facts of this case than are the principles announced in the cases cited in the opinion of the court.

I have, so far, only considered the question whether the remarks of the judge, of themselves, justify a new trial, and have arrived at the conclusion that they do not. This subject has been discussed independent of the question whether the instructions, with reference to which the remarks were made, were correct or not. Of course the judgment should be reversed if the instructions refused were in all respects correct, and there was any evidence in the case tending to show an assault upon the defendant. But I am of opinion that the instructions were not correct. The use of the word "affray" in lieu of "homicide" was calculated to mislead the jury with reference to the disputed question whether deceased, prior to the homicide, assaulted the defendant. An "affray" is defined to be "the fighting of two or more persons in a public place to the terror of the people." (Desty, Amer. Crim. Law, sec. 95a ; *Simpson* v. *State*, 5 Yerg. 357 ; *Hawkins* v. *State*, 13 Ga. 324 ; *Wilkes* v. *Jackson*, 2 Hen. & M. 360 ; *State* v. *Sumner*, 5 Strobh. 56 ; *McClellan* v. *State*, 53 Ala. 640.) An assault is any unlawful physical force partly or fully put in motion which creates a reasonable apprehension of physical injury to a human being. (1 Bish. Crim. Law, sec. 548 ; 2 Bish. Crim. Law, sec. 23 ; *State* v. *Hampton*, 63 N. C. 14 ; *State* v. *Vannoy*, 65 N. C. 533 ; *State* v. *Gorham*, 55 N. H. 168 ; *Com.* v.

*White*, 110 Mass. 409.)    The use of the word "affray" implied that an assault had been made.    The instructions assumed the existence of a fact that was in dispute, and were, therefore, properly refused.    The mere fact that the court gave a wrong reason for a correct ruling is not, of itself, sufficient to justify a reversal of the case.